LEE FINTEL,

        Plaintiff,

    v.

MARINA DISTRICT DEVELOPMENT
COMPANY, LLC d/b/a BORGATA
HOTEL CASINO & SPA, MARINA
DISTRICT DEVELOPMENT LLC,
MARINA DISTRICT DEVELOPMENT
HOLDING COMPANY, LLC, BOYD
GAMING CORPORATION, MGM
INTERNATIONAL, LLC, SUSANA
MAIESE, CHARLEEN RIPLEY,
DAVID ENG, VINCENT ALFIERI,
and RICHARD HENDERSON,

        Defendants.

Civil No. 16-8798 (NLH/KMW)

**OPINION**

**APPEARANCES**:

CAROLINE HOPE MILLER
SAMUEL CORDRAY WILSON
DEREK SMITH LAW GROUP PLLC
1835 MARKET STREET, SUITE 2950
PHILADELPHIA, PA 19103

    *Attorney for Plaintiff Lee Fintel.*

AMY ELIZABETH RUDLEY
RUSSELL L. LICHTENSTEIN
COOPER, LEVENSON, APRIL, NIEDELMAN & WAGENHEIM, PA
1125 ATLANTIC AVENUE
THIRD FLOOR
ATLANTIC CITY, NJ 08401

    *Attorneys for Defendants Marina District Development*
*Company, LLC d/b/a Borgata Hotel Casino & Spa, Marina District*
*Development, LLC, Marina District Development Holding Company,*

*LLC, Boyd Gaming Corporation, MGM International, LLC, Susana Maiese, Charleen Ripley, David Eng, Vincent Alfieri, and Richard Henderson.*

**HILLMAN**, District Judge

This case concerns claims by Plaintiff Lee Fintel against Defendants for violations of New Jersey employment discrimination laws. Presently before the Court is Defendants' Motion for Summary Judgment and Plaintiff's opposition. For the reasons stated herein, this Court will grant Defendants' Motion for Summary Judgment and dismiss this case.

**BACKGROUND**

This Court takes its facts from the statements of material facts presented by the parties. This Court will note disagreement where relevant.

Plaintiff Fintel was hired as a dealer at Marina District Development Company, LLC d/b/a Borgata Hotel Casino & Spa (the "Borgata") in Atlantic City, New Jersey in December 2002. Plaintiff asserts Boyd Gaming Corporation ("Boyd") was in charge of the "management of the Borgata and controlled human resource functions" at the Borgata and MGM International, LLC ("MGM"). (Pl.'s SOMF ¶ 1.) Regardless, Plaintiff's checks were written by Marina District, LLC.

During his time as a dealer, Plaintiff was subject to several instances of discipline and was eventually terminated on December 23, 2014. First, in late March 2013, Kelly Gasperini,

a fellow dealer at the Borgata, had her husband, another employee at the Borgata, complain about Plaintiff. The conduct: Plaintiff was barking at her on the casino floor. Plaintiff admitted to barking on the casino floor, but explained that he was not barking at Ms. Gasperini, but at another employee. He claimed it was an inside joke with the other employee, Yvonne Iannoco. Plaintiff was issued a "performance observation" for this conduct. (Defs.' SOMF ¶ 7.)

Then, in February 2014, Plaintiff pulled a female dealer's chair away from her during an active game in the middle of a hand. Plaintiff admitted this conduct (it was captured on surveillance cameras), stated he did not believe it was distracting, but agreed it could be distracting. For this conduct, Plaintiff was issued a written warning on February 20, 2014.

Next, Plaintiff approached Jenny Dang, a fellow dealer at the Borgata, at the table where she was scheduled to be working and offered her candy.[1] Dang told her supervisor at some point thereafter that Plaintiff was bothering her. Plaintiff asserts Dang said this jokingly and that she said "he bothers me, but

---

[1] Plaintiff denies this allegation in his statement of material facts, but provides no rebuttal to the fact that Plaintiff committed the act alleged. Instead, Plaintiff just states the game was not open. It does not appear that Defendants allege it was open, just that Dang was scheduled to work that game.

3

he's my friend." (Pl.'s SOMF ¶¶ 12-13.) Plaintiff admits that

he bought candy for women at work, but not men. He stated: "you

know, girls like candy. Buying candy for men would seem kind of

weird." (Defs.' SOMF ¶ 14.) Plaintiff clarifies that there was

never anything more intended by his behavior. As a result of

this behavior, Plaintiff was suspended on August 30, 2014 and

issued a final written warning on September 3, 2014.[2]

Finally, on December 10, 2014, Ashley Rice – a "Costumed

Beverage Server" at the Borgata – complained to both the

Security Department and her Manager that Plaintiff (1) asked for

a picture of her lips and (2) asked her to visit in prison a

former Borgata employee named Tony. It is a bit unclear from

the record, but it appears these comments, or similar comments,

were made over the course of multiple conversations.

Plaintiff admitted that he asked Rice, while they were

talking during a smoke break, for a picture to provide to Tony.[3]

---

[2] The Court notes that it does not appear that Dang wanted to get
Plaintiff into trouble. Plaintiff also asserts that Maiese
wrote Dang's statement and asked Dang to sign it, and that Dang
thought the "statement was inaccurate and that she didn't
understand [Maiese]." (Pl.'s SOMF ¶ 66.) Plaintiff's citation
to Dang's deposition does not state this. The Court will not
consider this assertion.

[3] Plaintiff denies this in his statement of material facts. But,
Plaintiff admitted in his deposition that he said "can you just
give me a picture so [Tony] can put it on his wall?" to Rice.
(Defs.' SOMF ¶ 18.) Thus, Plaintiff's denial is directly
contradicted by the record.

4

Plaintiff clarifies that he did not ask to take a picture, that he thought Tony and Rice dated, and that Rice would provide the picture to Tony herself.[4] Plaintiff further admits that he asked Rice whether she planned to visit Tony in prison. He denies Rice's statement that he asked her whether she was planning on having a conjugal visit with Tony.

In a written statement provided to the Borgata on December 12, 2014, Plaintiff stated Rice "never acted offended or said what I was saying was inappropriate" and that he "never said anything off-color or suggestive in nature." (Defs.' SOMF ¶ 20.) He also stated: "[s]ince I almost lost my job last time – I have went out of my way to be careful . . . ." (Defs.' SOMF ¶ 20.) Plaintiff also admitted that he commented on Rice's lipstick, calling it an "incredible" and "unusual" shade. (Defs.' SOMF ¶ 21.)[5] Plaintiff admitted that asking a co-worker for a picture to provide to a former employee who was now

---

[4] Again, the Court points out that the comment about the picture is directly contradicted by Plaintiff's own statement at his deposition. (See, supra, n.3.)

[5] Plaintiff denies this, pointing out that he did not talk about Rice's mouth and that a customer at the table also commented on her lipstick color. To the extent it is relevant, the Court notes that discussing the lipstick color on a person's lips is technically talking about an aspect of their mouth. Also, Plaintiff specifically states in the deposition lines cited: "I talked about her mouth." (Defs.' Mot. for Summ. J., Ex. C 159:5.) Inexplicably, this part of the deposition transcript was cited in Plaintiff's denial.

incarcerated would be a violation of Borgata's anti-harassment

policy.[6]  Not surprisingly, Defendants had policies and

procedures concerning discipline of employees and sexual

harassment of co-workers and customers.  This Court will discuss

those where relevant in the analysis section _infra_.[7]

Plaintiff also complains about statements that were made to

him during his time at the Borgata.  Plaintiff claims Frank

Reynolds, a floor person at the Borgata, said to him – after

Plaintiff said he was having a bad day – "Oh, my God, when you

get that old, you're going to have a bad day every day."

(Defs.' SOMF ¶ 26.)  Plaintiff did not report Reynolds' comments

and thought it was friendly.[8]  Plaintiff was also subject to age-

---

[6] Once again, Plaintiff denies this, but his denial is without
merit.  First, Plaintiff testified that he said to Rice: "Well,
can you just give me a picture so he can put it on his wall?"
(Pl.'s Opp'n Br., Ex. A(5) 158:5-6.)  When asked whether this
statement (admittedly, in a hypothetical) would be a violation
of the Borgata's anti-harassment policy, Plaintiff said: "If put
the way you phrase it, yes."  (Pl.'s Opp'n Br., Ex. A(5) 164:21-
165:8.)  At the risk of being redundant, the Court notes the way
Defendants' counsel phrased the question is exactly the
situation at issue.  As with the previous denial, Plaintiff
inexplicably cites this passage in his denial.

[7] Plaintiff apparently had another performance issue at the
Borgata.  Plaintiff mistakenly allowed a customer to past post a
bet on a game.  Plaintiff was given a written warning for that
in August 2013.

[8] Plaintiff – in his brief – claims these comments were hurtful.
That is not what Plaintiff testified to in his deposition.
Rather, he testified: "It's – like most workplace situations,
and everything is exaggerated in a casino environment.  People –
everybody has a nickname.  Most of them are innocent, some are

related comments from an unnamed floor supervisor. Plaintiff

told this floor supervisor to stop, but otherwise did not report

him to human resources or another higher-level individual.

Finally, an employee named James (with a last name starting with

"Van") apparently made comments about Plaintiff's age, but

Plaintiff stated it did not happen often. Besides asking James

to stop making these comments, Plaintiff did not report him to

human resources or another higher-level individual.

Plaintiff also specifically cites age-related comments made

by the Individual Defendants[9] in this case. Plaintiff admits

that Defendants Susana Maiese, Vincent Alfieri, and Charleen

Ripley never made age-related comments. But, he asserts,

Defendants David Eng and Richard Henderson did. Defendant Eng

said to Plaintiff - after Plaintiff said that a mid-30s female

customer was pretty - "[w]hat would somebody that looks like

that want with an old man like you." (Defs.' SOMF ¶ 38.)

Defendant Henderson also made two age-related comments to

Plaintiff. First, Defendant Henderson stated, as Plaintiff

attempted to boost himself onto a stool: "when you get to be

_____

hurtful. Sometimes people may joke." (Pl.'s Opp'n Br., Ex.
A(3) 82:20-24.) Reading this quote in context, it does not
appear to this Court that Plaintiff thought Reynolds' comment
was hurtful. In fact, he testified to just the opposite a few
questions later, as pointed out by Defendants.

[9] The "Individual Defendants" are Susana Maiese, Charleen Ripley,
David Eng, Vincent Alfieri, and Richard Henderson.

your age, you need a little boost, don't you?" (Defs.' SOMF ¶ 31.)  Defendant Henderson also stated Plaintiff should consider quitting smoking, because it was bad for him, especially at his age.  Plaintiff never complained of comments made by Henderson, but notes Defendant Alfieri was in the room during the first of these two remarks attributed to Henderson.

Plaintiff also alleges two Individual Defendants may have known about his alleged disability, Chronic Obstructive Pulmonary Disease ("COPD"), specifically manifesting in emphysema.  The parties agree that Defendant Ripley knew Plaintiff had taken a leave of absence because he was dealing with breathing issues.  Plaintiff alleges Henderson may have known about his emphysema.  Other than that, Plaintiff admits no one at the Borgata ever directly remarked to him or implied that having emphysema would be a liability for the company.

At some point after the case was filed, Plaintiff hired a human resources company to contact Defendants concerning a reference for Plaintiff.  An individual from this company was apparently able to speak with Defendant Alfieri.  Alfieri gave a generally positive reference of Plaintiff.  When asked about Plaintiff's weaknesses, he said "[h]e's old," then laughed, stated he was kidding because they are the same age, and then stated he had no weaknesses to list.  (Pl.'s Opp'n Br., Ex. W.)

Plaintiff filed this action against Defendants on November 28, 2016.  He filed an amended complaint on March 3, 2017 and a second amended complaint on June 2, 2017.  In it, Plaintiff alleged Defendants violated the New Jersey Law Against Discrimination ("NJLAD") on the basis of age, disability, and retaliation.  Plaintiff also alleges the Individual Defendants are individually liable under NJLAD on a theory of aiding and abetting.  Finally, Plaintiff requests punitive damages.

Defendants answered the second amended complaint on June 9, 2019.  Thereafter, discovery ensued.  On June 8, 2018, Defendants filed the instant Motion for Summary Judgment.  Plaintiff filed opposition and Defendants replied.  This matter is therefore ripe for adjudication.

<u>**ANALYSIS**</u>

**A.    Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

**B.    Motion for Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to

a judgment as a matter of law.  Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such

that a reasonable jury could return a verdict in the nonmoving

party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A fact is "material" if, under the governing

substantive law, a dispute about the fact might affect the

outcome of the suit.  Id.  "In considering a motion for summary

judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence;

instead, the non-moving party's evidence 'is to be believed and

all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)

(citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment

always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."); see Singletary v. Pa.

Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although

the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

**C.    Motion for Summary Judgment**

Defendants move for summary judgment on six different grounds.  First, Defendants argue that Plaintiff has not established a prima facie case for either his age discrimination or disability discrimination claims.  Second, Defendants argue Plaintiff has no evidence to support his retaliation claim.  Third, Defendants argue that even if Plaintiff has established a prima facie case on any of his NJLAD claims, Plaintiff cannot overcome Defendants' legitimate, non-discriminatory reasons for his termination.  Fourth, Defendants argue Plaintiff has no evidence to support individual liability for his NJLAD claims.  Fifth, Defendants argue that punitive damages are inappropriate in this case.  Sixth, Defendants argue Defendant Boyd Gaming should not be considered Plaintiff's employer in this case.[10]  This Court will address each argument in turn.

a. Whether Plaintiff Established a Prima Facie Case of Age or Disability Discrimination

First, this Court will address whether Plaintiff has established a prima facie case for age or disability discrimination under the NJLAD.  Since Plaintiff does not provide direct evidence of discrimination, this Court must analyze his claims under the McDonnell Douglas burden-shifting framework.  The Court will begin by laying out the requirements

---

[10] Based on the Court's decision infra, the Court finds this argument moot.  This Court will not analyze or decide the merits of this argument.

for a prima facie case of age and disability discrimination. Then, it will address Defendants' arguments concerning Plaintiff's alleged shortcomings in showing his prima facie case as to age and disability discrimination.

### i. NJLAD Prima Facie Case – Age Discrimination

The prima facie case under NJLAD for age discrimination requires a plaintiff to demonstrate that: "(1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) that the employer took the adverse action because of the plaintiff's age." Hopkins v. Kuehne + Nagel Inc., No. 15-7454, 2018 U.S. Dist. LEXIS 201918, at *24 (D.N.J. Nov. 28, 2018) (citing Farmer v. Camden City Bd. of Educ., No. 03-685 (JBS), 2005 U.S. Dist. LEXIS 7339, at *31 (D.N.J. Mar. 28, 2005)). Defendants do not dispute that Plaintiff was a member of a protected class based on his age or that he suffered an adverse employment action.

### ii. Prima Facie Case – Disability Discrimination

The prima facie case under NJLAD for disability discrimination requires a plaintiff to demonstrate that: "(1) plaintiff was handicapped or disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) plaintiff suffered an adverse employment action because of the handicap or disability; and (4) the

13

employer sought another to perform the same work after plaintiff had been removed from the position." Victor v. State, 952 A.2d 493, 501 (N.J. Super. Ct. App. Div. 2008) (citing Leshner v. McCollister's Transp. Sys., 113 F. Supp. 2d 689, 692 (D.N.J. 2000); Maher v. N.J. Transit Rail Operations, 593 A.2d 750 (N.J. 1991)). Defendants here do not dispute that Plaintiff suffered an adverse employment action.

### iii. Whether Plaintiff Shows the Second Prong of His Prima Facie Case for Age or Disability Discrimination

Defendants dispute whether Plaintiff was performing his job satisfactorily and meeting Defendants' expectations. Defendants argument boils down to a very simple point: Plaintiff was subject to multiple disciplinary actions – actions taken based on underlying facts he does not dispute – and those disciplinary problems meant Plaintiff was not satisfactorily performing his job. Plaintiff does not dispute this was the case. Instead, Plaintiff argues that he had been a dealer for over twenty years.[11]

A recent case from this district is analogous. In Guarneri v. Buckeye Pipe Line Servs. Co., the court was faced with an NJLAD disability discrimination claim. 205 F. Supp. 3d 606, 614 (D.N.J. 2016). The court there found that "the determinative

---

[11] Defendants, in turn, do not dispute that Plaintiff had the requisite experience and dealt proficiently.

question for this summary judgment motion is whether there is a genuine dispute of material fact whether Plaintiff was performing at a level that met the employer's expectations." Id. at 614-15 (citing Gaul v. Lucent Techs. Inc., 134 F.3d 576, 580 (3d Cir. 1998)). In determining the answer to this question, the court only looked at "objective job qualifications" and required the defendants in that matter to "provide [more than] mere allegations that [the p]laintiff's performance was inadequate." Id. at 615. The Court noted the "performance standard expected of all employees in a similar position suggests the use of sound, objective criteria." Id. at 616 (citing Weldon v. Kraft, Inc., 896 F.2d 793, 799 (3d Cir. 1990)).

The court found no factual dispute: the plaintiff had not met his employer's expectations and could not show his prima facie case. Id. at 615. The court noted four reasons why the plaintiff had not met his employer's expectations: (1) failure to secure new business, (2) insubordination write-ups, (3) customer complaints, and (4) inappropriate use of a company fuel card. Id. On this basis, the Court found the plaintiff could not "establish his prima facie case." Id. at 616. By implication, therefore, Guarneri found it was appropriate to consider workplace conduct issues at the prima facie stage of

the litigation and used this as a basis for finding that the plaintiff had not shown its prima facie case.

Other analogous cases find similarly on various types of discrimination claims.  See, e.g., Kohn v. AT&T Corp., 58 F. Supp. 2d 393, 408-10 (D.N.J. 1999) (finding a plaintiff had not stated a prima facie case because the undisputed facts showed plaintiff "was not performing various job assignments"); Henwood v. EMC2 Corp., No. 92-1044, 1993 U.S. Dist. LEXIS 12874, at *12-14 (D.N.J. Sept. 13, 1993) (holding a plaintiff was not adequately performing his job, in part, because of "attitude" issues which were uncontroverted).

But, it appears the New Jersey Supreme Court interprets this prong of the prima facie case differently than these federal cases and Defendants in this case.  According to the New Jersey Supreme Court, for an NJLAD case "[a]ll that is necessary is that the plaintiff produce evidence showing that she was actually performing the job prior to the termination."  Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1144 (N.J. 2005).  "[O]nly the plaintiff's evidence should be considered."  Id.  And, "even if a plaintiff candidly acknowledges, on his own case, that some performance issues have arisen, so long as he adduces evidence that he has, in fact, performed in the position up to the time of termination, the slight burden of the second prong is satisfied."  Id.

Obviously, under this formulation, the fact that Plaintiff has been a dealer for twenty years and that he was dealing up until the time of his termination – excluding his suspension pending termination – is enough to allow Plaintiff to meet this "slight burden." Thus, on the basis that Plaintiff was not performing his job up to Defendants' expectations, this Court cannot dismiss Plaintiff's age or disability discrimination claims.

### iv. Whether Plaintiff Shows the Fourth Prong of His Age Discrimination Prima Facie Case

Defendants also argue that Plaintiff was not replaced by a younger individual and thus cannot show the fourth prong of his prima facie case for age discrimination. It appears Plaintiff agrees he was not replaced by a younger individual. (See Pl.'s Opp'n Br. 8 ("Plaintiff was not replaced permanently by a substantially younger employee.").) Plaintiff was replaced, however, by a rotating cast of on-call casual dealers of various ages. Defendants argue Plaintiff must show that he was replaced by a younger individual in order to meet this fourth prong of the prima facie case for age discrimination.

Defendants are incorrect. Instead, what is required is "a logical basis on which to find that a plaintiff's termination was significantly affected by his or her age." Arenas v. L'Oreal U.S. Prods., Inc., 790 F. Supp. 2d 230, 237-38 (D.N.J.

2011).  As with the other prongs of a prima facie case, this is

not a heavy burden.  Plaintiff cites to statements made by

various individuals about his age during and after his

employment with Defendants, including those made by some

Individual Defendants.  These statements are enough to meet this

fourth prong.[12]

### v. Whether Plaintiff is a Member of a Protected Class Based on His Alleged Disability

Defendants assert Plaintiff's alleged disability, COPD,

specifically emphysema, does not allow Plaintiff to show he is

"handicapped" or "disabled" as defined in the NJLAD.  Plaintiff

asserts it does.  The Court finds it does.  Plaintiff has

provided a document sufficient to show he may suffer from this

condition.  (Pl.'s Opp'n Br., Ex. V.)  Seeing as the "statutory

definition of 'handicapped' . . . is very broad in its scope"

and that conditions such as "spinal and back ailment[s]" and "a

heart attack" were enough to show this first prong of the prima

facie case, this Court finds no reason to dismiss this claim on

this ground.  Clowes v. Terminix Int'l, Inc., 538 A.2d 794, 803-

04 (N.J. 1988).  Plaintiff has thus met the first prong of his

prima facie case for disability discrimination.

---

[12] Additionally, the Court finds it more appropriate to consider whether discrimination on the basis of age motivated Defendants' decision to terminate Plaintiff in the pretext analysis, not in the prima facie case.

### vi. Whether Plaintiff Was Terminated Because of His Disability

Defendants also assert that, even if Plaintiff's alleged disability is cognizable under NJLAD, he does not show that his termination was in any way connected to his disability.  In response, Plaintiff merely responds that Defendant Henderson knew about his condition at the time of Plaintiff's termination. The only statement this Court can find on the record is that Defendant Henderson once stated to Plaintiff that he should quit smoking.  No reasonable jury could infer from this lone statement and Henderson's knowledge of Plaintiff's condition that his COPD in any way motivated the decision to terminate him.  For this reason, the Court will dismiss Plaintiff's disability discrimination claim under NJLAD.  However, for the sake of completeness, the Court will also examine it under a pretext analysis where it also fails to overcome Defendants' Motion for Summary Judgment.

### b. Whether Plaintiff Presents Sufficient Evidence of Retaliation by Defendants

Second, this Court will examine whether Plaintiff's retaliation claims may survive summary judgment.  Defendants challenge whether Plaintiff can establish a prima facie case for retaliation in this case.  Defendants argument appears to boil down to one specific point: Plaintiff's so-called complaints

were only about discipline he received due to his own harassing conduct.

Plaintiff asserts he can show a prima facie case and that a dispute of material fact exists. Plaintiff argues that the discipline he received concerning the Dang incident was unwarranted and that he felt he was being unfairly targeted. Moreover, when reviewing his human resources file, Plaintiff alleges he uncovered write-ups that were never discussed with him.[13] After discovering these two issues, Plaintiff asserts he told human resources that he would pursue legal redress if he was terminated as a result of Dang's complaint and the previously unknown file write-ups. (Pl.'s Opp'n Br. 20.)

Plaintiff's citations in this section of his opposition brief concerning the above facts are solely to an affidavit attached to his opposition brief. This affidavit does not cite any portions of his deposition transcript or any record evidence. That means these statements are not properly before the Court on this motion, but are mere allegations. Thus, this Court will disregard them.[14]

---

[13] Those write-ups, to the extent they exist, were never presented to the Court.

[14] Producing evidence in this way is procedurally improper and is a violation of Local Civil Rule of Procedure 56.1. This not only prejudices the opposing party, who cannot therefore respond to these allegations in the proper form, it also burdens the Court. The Court is not privy to all of the discovery conducted

"To establish a prima facie case of discriminatory retaliation, plaintiff[] must demonstrate that: (1) [he] engaged in a protected activity known by the employer; (2) thereafter [his] employer unlawfully retaliated against [him]; and (3) [his] participation in the protected activity caused the retaliation." Craig v. Suburban Cablevision, 660 A.2d 505, 508 (N.J. 1995); accord Kachmar v. Sungard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997).

As it does not appear that Defendants contest either of the first two prongs, the Court will only examine the third prong. Defendants are correct that Plaintiff has not met the third prong here. First, retaliation can occur only after Plaintiff participates in a protected activity. Therefore, by Plaintiff's

---

in the case, and therefore cannot accurately determine whether statements made by a litigant in an affidavit produced after discovery has closed is actually supported by the record. Producing evidence in this manner robs the Court of the means to properly assess the factual record. But the problem goes beyond orderly procedure. Production of an affidavit in this manner is also suspect, as it calls to mind the specter of the sham affidavit. The problems of the sham affidavit stem from the fact that only after being faced with an argument on summary judgment does a party finally produce evidence rebutting it. Although the Third Circuit does not explicitly outlaw this practice, it does allow a court to disregard any allegations within an affidavit of this type unless explicitly supported by the factual record created before summary judgment. Daubert v. NRA Group, LLC, 861 F.3d 382, 392 (3d Cir. 2017) ("[The court] may similarly disregard an affidavit 'entirely unsupported by the record and directly contrary to [other relevant] testimony . . . .'" (quoting Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 254 (3d Cir. 2007))).

own theory of retaliation, only events occurring after he had a conversation with human resources are relevant in this case. Second, because the factual basis for Plaintiff's assertion of targeting is unsupported by the factual record, the Court cannot consider it.[15]  Third, the only other event Plaintiff points to which occurred after his conversation with human resources concerned Rice and his termination.  As discussed _infra_, there are no inconsistencies with these events that would suggest discrimination in retaliation for any protected activity engaged in by Plaintiff.  Thus, Plaintiff is merely left with the fact that four months elapsed between his protected activity and his termination.

Under these circumstances, a period of time of that length is legally insufficient.  LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 1989) (holding three-month period between protected activity and adverse employment action not sufficient to support prima facie case); Young v. Hobart W. Grp., 897 A.2d 1063, 1073-74 (N.J. Super. Ct. App. Div. 2005) (holding four-month period between protected activity and adverse employment action not sufficient to support prima facie case).  In fact, "[o]nly where the facts of the particular case are so 'unusually suggestive of retaliatory motive' may temporal

---

[15] The other assertions concerning Dang, as described _infra_, do not show discriminatory animus.

proximity, on its own, support an inference of causation."

Young, 897 A.2d at 1073 (citing Krouse v. Am. Sterilizer Co.,

126 F.3d 494, 503 (3d Cir. 1997)).  Thus, this Court will

dismiss Plaintiff's retaliation claim.

    c. Whether Plaintiff Overcomes Defendants' Legitimate,
       Non-Discriminatory Reasons for His Termination

    Third, this Court will address whether Plaintiff presents

sufficient evidence to overcome Defendants' legitimate, non-

discriminatory reasons for Plaintiff's termination.  For this

analysis, the Court will assume for the sake of argument that

Plaintiff was able to present a prima facie case for the

discrimination and retaliation claims discussed supra.  If that

were the case, Defendants would be required to present a

legitimate, non-discriminatory reason for Plaintiff's

termination.

    Under the law,

        [t]he employer satisfies its burden of production by
        introducing evidence which, taken as true, would permit
        the conclusion that there was a nondiscriminatory reason
        for the unfavorable employment decision . . . . The
        employer need not prove that the tendered reason
        actually motivated its behavior, as throughout this
        burden-shifting paradigm the ultimate burden of proving
        intentional discrimination always rests with the
        plaintiff.

Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)(emphasis in

original)(citations omitted).  Defendants have done so.

Defendants assert Plaintiff violated company policy on multiple

occasions because of his behavior towards co-workers, leading to his termination.  This is a legitimate, non-discriminatory reason supporting Plaintiff's termination.

Since Defendants have come forward with a legitimate, non-discriminatory reason for Plaintiff's termination, it falls upon Plaintiff to show why this reason was pretextual.  Generally, the Third Circuit has held:

> to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes, 32 F.3d at 764.  A plaintiff's evidence must "allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)."  Id. (citations omitted).

Specifically, as to the first prong of Fuentes, the relevant standard requires Plaintiff to:

> "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"  Fuentes, 32 F.3d at 765.  In simpler terms, he must show, not merely that the employer's proffered reason was wrong, but that it was

> so plainly wrong that it cannot have been the employer's
> real reason.

Keller v. Orix Credit All., 130 F.3d 1101, 1109 (3d Cir. 1997)

(emphasis added).  Plaintiff presents eight separate arguments

concerning pretext, most attacking Defendants' proffered reason

as "unworthy of credence" and the rest implying, through

statements made by various Individual Defendants and other

employees, that Defendants terminated Plaintiff for a

discriminatory reason.  The Court will examine each in turn.

### i. Plaintiff's Challenges to the Incident Involving Ms. Gasperini

First, Plaintiff confronts the barking incident.  Plaintiff

claims this incident cannot be used to support his termination

for the following reasons:

- Ms. Gasperini did not ever ask Plaintiff to stop barking;

- Plaintiff testified it was an inside joke, not a comment
  concerning Ms. Gasperini;

- Plaintiff testified he did not intend the barking to be
  directed at Ms. Gasperini;

- Ms. Gasperini's complaint revealed "that she believed the
  Plaintiff was colluding with Ms. Iannoco against her";

- Defendants have not provided proof that Ms. Iannoco was
  interviewed or reprimanded for Plaintiff's barking; and

- Ms. Gasperini did not thereafter complain about Plaintiff
  again.

(Pl.'s Opp'n Br. 12-13.)

Whether Plaintiff's conduct was a violation of policy does not depend on (1) whether he was directly told to stop by the person who was offended by it, (2) whether it was an inside joke, (3) whether Plaintiff did not mean to direct it at Gasperini, (4) Gasperini's belief about collusion between Plaintiff and Iannoco, (5) whether Iannoco was interviewed or reprimanded, or (6) whether Gasperini ever complained about Plaintiff again. Plaintiff has admitted to barking on the casino floor. Even if Plaintiff is correct that this was merely an inside joke, Plaintiff still barked while he was working on an active casino floor. That could reasonably be considered a violation of policy by Defendants. None of the reasons given by Plaintiff either show Defendants' legitimate, non-discriminatory reason is unworthy of credence or suggest discrimination motivated Defendants' decision.

### ii. Plaintiff's Challenges to the Chair-Pulling Incident

Second, Plaintiff confronts the chair-pulling incident. Plaintiff does not appear to assert this cannot be used to support Defendants' legitimate, non-discriminatory reason for firing him. Instead, Plaintiff argues it was "meant as a

26

harmless joke" and it was not a case of sexual harassment.
(Pl.'s Opp'n Br. 13.) Plaintiff admits "it was an [] issue of
professionalism on the floor" and that "[s]urveillance footage
showed that Plaintiff had pulled the chair out." (Pl.'s Opp'n
Br. 13.) It does not appear that Defendants assert this
unprofessional behavior was actually sexual harassment, and the
Court does not need determine that question. But, considering
Plaintiff's admissions, Plaintiff's arguments here do not
support a finding of pretext because they do not show
Defendants' legitimate, non-discriminatory reason for firing him
is unworthy of credence or was actually motivated by
discrimination.

### iii. Plaintiff's Challenges to the Incident Involving Dang

Third, Plaintiff attempts to challenge the veracity of
Dang's complaint. Plaintiff asserts only in his brief, not in
his counterstatement of facts, that Dang told him she was forced
to sign her statement and that she would clear up the
"miscommunication" on the Monday after it occurred. (Pl.'s
Opp'n Br. 13-14.) The only citation Plaintiff makes here is to
his declaration prepared after discovery had closed. Since
Plaintiff has provided no record support for these assertions
and the Court has not found any within its possession, the Court

will not consider these assertions.  Thus, this argument does not support pretext.

### iv. Plaintiff's Argument Concerning Defendants' Policies

Fourth, Plaintiff argues Defendants ignored their progressive discipline policy.  Plaintiff asserts Defendants' progressive discipline policy restricts Defendants from considering complaints that are older than twelve months.  The fact that the Gasperini complaint – which was more than twelve months old in December 2014 – was considered in Plaintiff's eventual termination is, according to Plaintiff, evidence of pretext.  Defendants assert that Plaintiff has misstated their policies and that Defendants had authority under either the progressive discipline or the anti-harassment policy to impose discipline and eventually terminate Plaintiff.

To be clear, part of the disciplinary policy states:

Any disciplinary step or steps may be skipped at the discretion of the Vice President of Talent or designee after investigation and analysis of the total situation and circumstances and for serious offenses termination may be the first and only disciplinary step taken.

(Defs.' Mot. for Summ. J., Ex. M.)  This is echoed in the progressive discipline policy.  (See Pl.'s Opp'n Br., Ex. S 2 (stating almost word-for-word the above sentence and stating explicitly that serious offenses may result in termination without progressive discipline).)  On its face, the policy did

not prohibit Defendants from considering the entire circumstances or from skipping any step of progressive discipline when imposing discipline.

It also states: "[i]n most cases, twelve (12) months from the date a progressive discipline notice is issued, the discipline will not be given consideration in subsequent progressive discipline actions." (Pl.'s Opp'n Br., Ex. S 2.) Again, on its face, the progressive discipline policy does not restrict Defendants from imposing progressive discipline based on prior discipline that is over twelve months old. Plaintiff does not specifically state that any other portion of the policy was not followed.

Finally, Defendants' anti-harassment policy is clear and would allow for termination after an investigation concludes an individual has committed a violation. Plaintiff admits that his actions concerning Rice violated Defendants' anti-harassment policy. By extension, he therefore admits it was appropriate for Defendants to discipline him "up to and including termination." (Defs.' Mot. for Summ. J., Ex. N 7.) Therefore, regardless of the progressive discipline policy, Defendants undoubtedly had the authority to dismiss Plaintiff for his conduct under the anti-harassment policy. This Court finds this argument may not be used to support a finding of pretext because it is unsupported by the record.

### v. Plaintiff's Challenges to Defendants' Fraternization Policy

Fifth, Plaintiff argues his firing was pretextual because Defendants "ignore their policies with respect to managers who date subordinate employees." (Pl.'s Opp'n Br 14.) Plaintiff asserts both Defendants Eng and Ripley "dated subordinate employees in violation of the Borgata's explicit policy prohibiting that." (Pl.'s Opp'n Br. 14.) Defendants assert Plaintiff has the policy wrong, citing to the testimony of the Vice President of Talent, Signe Huff. Defendants also explain there is a difference between a consensual relationship and sexual harassment.

In support of his argument, Plaintiff cites to a slideshow which states "[a]ssociates holding the following positions are prohibited from having intimate physical contact with any associate of Borgata." (Pl.'s Opp'n Br., Ex. I 2 (emphasis in original).) The slideshow then lists what appears to the Court to be supervisory roles. Defendants do not appear to dispute the validity of this slideshow. However, Defendants cite Huff's testimony. According to Huff, consensual relationships between supervisors and subordinates are common and just require self-disclosure so that Defendants may keep the supervisor and subordinate separate. (Defs.' Reply Br. 11-12.)

Plaintiff's argument is therefore factually unsupported and legally inapposite. Factually, it appears that Defendants' slideshow and Huff's testimony are consistent. While Defendants prohibit intimate, physical relationships between supervisors and subordinates, Defendants do not discipline the employees in those relationships. Instead, they require self-disclosure. As Plaintiff has not pointed to any record evidence showing discipline is appropriate for a consensual relationship of this type, the Court must accept the facts as presented.[16]

Moreover – and independently, Defendants are right: Eng and Ripley's conduct is not comparable to Plaintiff's conduct. A difference in treatment here is not evidence of pretext because the behavior is categorically different. Plaintiff's behavior is admittedly a violation of Defendants' anti-harassment policy while Defendant Eng and Ripley's behavior is not. Since this does not show Defendants' legitimate, non-discriminatory reason for terminating Plaintiff is unworthy of credence or motivated by discrimination, this Court cannot find Plaintiff's argument here supports a finding of pretext.

### vi. Plaintiff's Challenges to the Incidents Involving Rice

---

[16] Even if Eng and Ripley should have been disciplined, Plaintiff cannot point to their treatment to argue his own conduct - which he has admitted is violative of Defendants' anti-harassment policy – is not worthy of discipline.

Sixth, Plaintiff challenges some aspects of the incident concerning Rice. Plaintiff asserts that Rice did not make her complaint until she felt Plaintiff had insulted her intelligence in a separate conversation (in front of customers). Defendants assert Rice did not lose her ability to complain about Plaintiff's conduct just because she waited. Plaintiff's argument is irrelevant. Plaintiff has admitted the facts underlying Rice's complaint, with the exceptions the Court noted supra. Because Plaintiff's termination was based on those facts, when Rice reported him is irrelevant to a determination of pretext.

Plaintiff also maintains that his comments were in jest, and that he made his statements on the mistaken belief that Rice and Tony were "once an item." (Pl.'s Opp'n Br. 15.) As Defendants point out, whether or not Plaintiff was joking, his conduct was still a violation of the anti-harassment policy. Moreover, Plaintiff – as this Court has reiterated multiple times – has admitted to the conduct in question. This argument is also irrelevant.

Additionally, Plaintiff seems to argue that Rice's complaint against him was a "pattern and practice of discriminating against age." (Pl.'s Opp'n Br. 16.) Plaintiff

cites to Rice's alleged deposition testimony[17] about customers making a pass at her.  Even though this happened regularly, Rice only reported one customer who was "an older gentleman." (Pl.'s Opp'n Br. 16.)  Plaintiff asks the Court to infer that because Rice's only two complaints of harassment were against older men that her complaint could have been motivated by discrimination.

Plaintiff's argument suffers several factual infirmities. First, Plaintiff makes the assumption, without support in the record, that Rice was "hit on" by both young and old patrons. More importantly, even if that assumption is a reasonable inference, Plaintiff has cited nothing in the record to show that those who made the decision in this case knew Rice only reported Plaintiff because of his age.  A "plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  <u>Fuentes</u>, 32 F.3d at 765. Without any assertions that the employer or decisionmaker terminated Plaintiff knowing the harassment complaint was based

_____

[17] Although Plaintiff cites to Rice's deposition, the Court is not in receipt of any portion of this deposition.  The Court will assume the veracity of these assertions for purposes of evaluating Plaintiff's argument.

on age,[18] it cannot be said that the employer acted with a discriminatory animus.

Third, Plaintiff still fails to attack the factual basis of the complaint against him. He has admitted – as this Court has said time and again – that his conduct was a violation of Defendants' anti-harassment policy. Whatever Rice's motivations, Plaintiff has admitted (with the exceptions noted by the Court) that her statement was true.

This, and Plaintiff's other arguments concerning the incidents with Rice, cannot be used to show Defendants' legitimate, non-discriminatory reason for terminating Plaintiff is unworthy of credence or was motivated by discrimination.[19]

---

[18] This applies equally to the argument made by Plaintiff that Rice was only reporting his behavior because he had insulted her intelligence. Plaintiff has provided no evidence that Defendants had any knowledge of this alleged motivation.

[19] Plaintiff also mentions that Maiese's daughter-in-law was a "Borgata Babe" that worked with Rice. Although the Court notes this assertion for the sake of completeness, it is unclear what relation Plaintiff thinks this has on his case. This Court finds it is irrelevant. Finally, Plaintiff's criticisms of the investigation conducted by Defendants into Rice's complaint are similarly unavailing. Whether the female dealer Rice relied upon to determine Plaintiff's name so she could make her complaint was ever interviewed by Defendants is inapposite – Plaintiff admits he made the statements to Rice. What this unknown female dealer could have added to the investigation is unclear. Whether Rice was interviewed after she gave her statement concerning Plaintiff is also irrelevant to the issue here.

vii.  **Whether Comments Made to Plaintiff During the Course of His Employment Concerning His Age May Provide a Basis for Pretext**

Seventh, Plaintiff alleges that comments were made during course of his employment by a number of individuals concerning his age.  First, the Court will address the comments by non-decisionmakers.  Second, the Court will address the comments of the alleged decisionmaker.

Plaintiff discusses comments made by four non-decisionmakers: (1) Frank Reynolds, a floor person, (2) David Eng, one of the Individual Defendants, (3) an unidentified floor supervisor, and a (4) James, who was a part-time supervisor. Reynolds stated "Oh, my God, when you get that old, you're going to have a bad day every day" in response to Plaintiff saying he was having a bad day.  Eng stated, in response to Plaintiff remarking that a young female customer was pretty: "what would somebody that looks like that want with an old man like you." The unidentified floor supervisor generally made age-related comments.  James made age-related comments that Plaintiff thought were mean-spirited and were an expression of his anger when he got upset.

The Court must find any reasonable inference in favor of Plaintiff, the non-moving party.  And, "discriminatory comments by nondecisionmakers, or statements temporally remote from the decision at issue, may properly be used to build a

35

circumstantial case of discrimination." <u>Lockhart v. Westinghouse Credit Corp.</u>, 879 F.2d 43, 54 (3d Cir. 1989) (citations omitted). But, generally, "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision." <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 545 (3d Cir. 1992).

The Court will give little weight to those statements made by an unidentified speaker and James. Not only were these comments made by nondecisionmakers, Plaintiff was unable to pin them to a particular time period. All Plaintiff has provided the Court is that the comments were age-related.[20] Based on this paucity of information, the Court finds that no reasonable juror could find this evidence supports pretext. As to the Reynolds and Eng statements, the Court will follow the holding in <u>Ezold</u> and not give them great weight in considering pretext.

Next, the Court considers those statements which were made by a decisionmaker. Here, it appears that Plaintiff asserts Defendant Henderson made the decision to terminate him. One

---

[20] Although the Court makes all reasonable inferences in favor of Plaintiff, it is difficult to make any reasonable inference without knowing the content of the statements made. An age-related comment could be positive, neutral, or negative. Obviously, a comment positively commenting on Plaintiff's age would not show pretext.

comment made by Defendant Henderson was that Plaintiff should quit smoking.  According to Plaintiff's deposition, he thought this was an expression of concern.  Another comment by Henderson, when Alfieri was apparently present, occurred when Plaintiff was lifting himself onto a stool in the employee break room.  As he was doing so, Henderson said "when you get to be your age, you need a little boost, don't you?"  At the time of his deposition, Plaintiff stated that he did not find this statement offensive.[21]

As with the Reynolds and Eng statements, the Court will follow the holding in <u>Ezold</u> and not give Henderson's statements much weight.  Although Henderson is a decisionmaker, there is no indication when these statements were made or whether they were close in time to when the decision to terminate Plaintiff was made.

Considering these statements together, the Court finds that there is insufficient evidence from which a jury could find pretext.  Most of the statements are by non-decisionmakers.  The statements appear to be rather isolated, and for the statements we know the contents of, ambiguous.  As the Third Circuit has

---

[21] Besides, these statements, it is important to note that none of the statements made by non-decisionmakers was ever reported to human resources or any higher authority.  In other words, there is no evidence that Henderson had any knowledge of those statements at the time of the termination decision.

held proof of stray remarks of this type "is not a sufficient basis for denying an employer's motion for summary judgment." Warner v. FedEx Ground Package Sys., 129 F. App'x 741, 744 (3d Cir. 2005). As these remarks are the only basis upon which this Court finds Plaintiff could possibly show pretext, this Court finds they are insufficient.

### viii. Whether the Reference Check May Provide a Basis for Pretext

Eighth, Plaintiff asserts that a reference check made to Defendants by an outside agency hired by Plaintiff reveals that Defendant Alfieri[22] thought one of Plaintiff's weaknesses was that he was old. Defendants argue the statement is inadmissible, irrelevant based on when it was said, and not supportive of pretext. So that this statement is considered in context, the Court quotes the reference check in full. According to the reference check, Defendant Alfieri is supposed to have said when asked about Plaintiff's weaknesses: "'He's old.' He laughs and said he is kidding because they are the

---

[22] Defendants assert the speaker is unknown, as no recording or transcript was ever produced of this conversation, even though Plaintiff asserted during his deposition that one was made. No recording has been produced by either side. It also appears that Plaintiff thought – based on his deposition – that the conversation was with Defendant Henderson, not Defendant Alfieri. However, there is no record evidence to support that position, and all the record evidence is to the contrary. For that reason, there is no material dispute of fact as to whether Alfieri was the speaker.

same age.  He didn't have any weaknesses to list." (Pl.'s Opp'n
Br. Ex. W.)

Even though this statement is more direct in its content,
its timing (a month <u>after</u> the termination decision was made) and
the fact that it was said by a non-decisionmaker make it
insufficient to support pretext.  As with the statements
discussed <u>supra</u>, this Court finds this statement is insufficient
to support pretext.  Thus, this Court finds that Plaintiff's
NJLAD claims for age and disability discrimination and
retaliation fail because Plaintiff has failed to show that
Defendants' legitimate, non-discriminatory reason for
terminating him was pretextual.

> d. <u>Whether Plaintiff Presents Sufficient Evidence to
> Support the NJLAD Claims for Individual Liability</u>

Fourth, this Court will determine whether Plaintiff's NJLAD
claims against Individual Defendants may survive summary
judgment.  As a result of this Court's decision as to the NJLAD
claims discussed <u>supra</u>, this Court will also dismiss the NJLAD
aiding and abetting claims brought by Plaintiff against
Individual Defendants.

Generally, only an "employer" may violate the NJLAD, and
"an individual supervisor is not defined as an 'employer' under
the LAD."  <u>Tarr v. Ciasulli</u>, 853 A.2d 921, 928 (N.J. 2004).
Therefore, a supervisor or employee may only be personally

liable for aiding and abetting an employer in violating the
NJLAD. N.J. STAT. ANN. 10:5-12(e). Because the Court has found
that there have been no violations of the NJLAD in this case, it
must also dismiss all aiding and abetting claims against all
Individual Defendants. See Galman v. Sysco Food Servs. of Metro
N.Y. LLC, 674 F. App'x 211, 214 n.2 (3d Cir. 2016) ("[S]ince no
violation of the NJLAD occurred, this claim must fail because
there is no one to aid or abet." (citing Tarr, 853 A.2d at
929)).

     e. Whether Punitive Damages Are Available

    Fifth, this Court will address whether punitive damages are
appropriate in this case. In light of the fact that all of the
Plaintiff's other claims have been dismissed, punitive damages
are unavailable. See Muraveva v. City of Wildwood, No. 17-916
(JBS/JS), 2018 U.S. Dist. LEXIS 212352, at *30 (D.N.J. Dec. 18,
2018) ("A request for punitive damages is 'similar to a
derivative claim' and is, therefore, a 'separate but dependent
claim for relief.' In re Collins, 233 F.3d 809, 811 (3d Cir.
2000). Because all of Plaintiff's substantive claims will be
dismissed, there can be no liability for punitive damages and
her claim for punitive damages must be dismissed as well."); 
Sims-Felton v. Hegedus, No. 11-4923 (NLH/AMD), 2013 U.S. Dist.
LEXIS 61183, at *21 n.9 (D.N.J. Apr. 30, 2013) ("Aside from
plaintiff's LMRA § 301/defamation and discrimination claims,

plaintiff has asserted ancillary claims for punitive damages and loss of consortium. Because those claims are derivative of the claims that are now dismissed, those claims are also dismissed."). Thus, this Court will dismiss Plaintiff's punitive damages claims.

## CONCLUSION

Based on the foregoing analysis, this Court will grant Defendants' Motion for Summary Judgment and will dismiss this action in its entirety.

An appropriate Order will be entered.


Date:  March 28, 2019                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.